## MILLER v. KNIGHT.

1. PRINCIPAL AND SURETY. *When agreement for delay will discharge surety.* The taking of a deed of trust by holder of a note, *prima facie,* is an additional or collateral security, and does not prevent the holder of the note from suing both the principal and surety, and therefore does not operate to discharge the surety, although taken without the consent of the surety, unless it is otherwise expressly agreed.

2. SAME. *Same.* The surety called on the holder and urged him to avail himself of the benefits of a deed of trust and file the claim. The holder replied that the surety need not trouble himself about the note, that he had it secured. Afterward, the principal to the note became insolvent, and the holder brought suit on the note against the surety, who filed his bill and prayed to be discharged. *Held,* that the surety was not discharged on this state of facts.

Cases cited: Lea *v.* Dozier, 10 Hum., 450–1; Hill *v.* Bostic, 10 Yer., 410; Decherd *v.* Blanton, 3 Sneed, 373.

No record found.

SNEED, J., delivered the opinion of the court.

Complainant was surety on a note for two thousand dollars, given by A. Moore & Co., L. L. Warr and H. P. Rogers to L. T. Knight, dated January, 1866, due twelve months after date. He filed this bill, claiming to be discharged from liability on two grounds:

*First.* That Knight had made a binding agreement for delay for twelve months from July 4, 1866, in consideration of a deed of trust made by Warr and Rogers, conveying an amount of property estimated at $10,600 to one Grant, to secure this and other debts in said deed mentioned—said agreement being without the knowledge or consent of complainant.

*Second.* That A. Moore, one of the makers of the note, had made a deed of trust of his individual and firm property—the proceeds of the first to be applied to the payment of his individual debts; of the second, to pay his firm debts. That complainant had called on Knight and suggested that he file his claim with the trustee in the deed of trust, and accept the provisions of the trust, but that Knight told him that he need not be uneasy, that he had the note just where he wanted it, and it was perfectly secure, so that Miller would not be troubled with it. He charges that he insisted on Knight's accepting the benefit of this trust, which he failed and refused to do, with which conduct complainant says he was not satisfied.

It further appears that the principals in the note have become insolvent, and complainant has been sued on the note, and this bill seeks an injunction against the prosecution of that suit.

On the first question we need only say, that after argument and careful investigation of the question at Nashville during the last term of this court, we held that "taking a deed of trust, such as the one before us, did not discharge the surety; that it was not a suspension of the debt, because not so expressly agreed, nor necessarily implied from the terms of the deed." 10 Hum., 450–51.

In the language of the Supreme Court of the United States in *United States* v. *Hodge,* 6 How. R., 75, *"prima facie,* such an instrument is an additional or collateral security, and leaves the existing remedies

of the creditor, against both principal and surety, in-
tact." In addition, that it was for the benefit of
the surety, as he would, on payment of the debt, be
entitled to the benefit of the security thus taken by·
way of restitution.

The case of *Hill* v. *Bostick*, 10 Yer., 410, is not
in. conflict with this rule, for what is called in the
syllabus of that case an additional security, was, in
fact, a new note, having four months to run, made
by the principals.

This is a very different case from the one in the
record. We are satisfied with the rule laid down,
and adhere to it.

As to the second question, the rule . is correctly
laid down in Amer. Lead. Cases, vol. 2, ed. of 1871,
as follows: A promise to look solely to the debtor,
or a promise to proceed forthwith against him, when
standing alone, is a *nudum pactum*, and can have· no
effect on the obligation of the surety; and this is
equally true of an allegation that the debt has been
paid, and the surety will have no further trouble.
When, however, the surety is induced by such an
assurance to surrender the securities which he has re-
ceived from the principal, or to forego any means of
indemnity or protection, an estoppel will arise to the
extent of the resulting loss. Such was the case of
*Carpenter* v. *King*, 9 Metc., 511, where the surety
had relinquished a security held by him on being told
by the creditor that the debt had been paid, although
in fact it had not been paid in full. The principle
on which recantations, such as are alleged in the bill,

or such as are cited above, releases the surety, is that of estoppel, where there must be an admission or statement inconsistent with the assertion of the right claimed, an action of the other party upon such statement or admissions, and an injury as the result of such action. *Decherd* v. *Blanton,* 3 Sneed, 373.

The allegation of the bill, that Knight told Miller that he had the note secured and complainant would never be troubled about it, would not, under the above rules, be sufficient to release the surety, even if proved definitely, as no injury is shown to have resulted from the statement, no security given up, nor any means of indemnity or protection foregone in reliance on the fact charged. We need not examine the evidence in detail, as it would not do more than prove the allegations of the bill.

The decree of the Chancellor dismissing the bill is affirmed, and a reference to the clerk to ascertain the value of gold when the note fell due, for which purpose, if desired, the case can be remanded, cost to be paid by the complainant.